Christopher A. Seeger
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ 07102
(973) 693-9100

Lesley E. Weaver, Esq.
BLOCK & LEVITON LLP
520 Third Street, Suite 108
Oakland, CA 94607
(415) 968-8992
(admission *pro hac vice* to be requested)

*Attorneys for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Hassan ZAVAREEI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Civil Action No.<br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Hassan ZAVAREEI (Plaintiff), individually and on behalf of all others similarly situated (the "Class"), alleges the following through his counsel:

## INTRODUCTION

1.     Mercedes-Benz has a long history with diesel engines, developing the first diesel automobile in 1936 to exploit the power and fuel efficiency of an engine powered by diesel fuel. However, the power and efficiency of diesel engines come at a price: pollution. Diesel is a dirtier fuel than gasoline and always will be. Gasoline is refined, diesel is raw.

2.      Some of the primary pollutants produced by diesel engines are nitrogen oxides ("NOx") – which generally describe several compounds comprised of nitrogen and oxygen atoms.  These "greenhouse gases" are a leading cause of ground level ozone (smog), acid rain and the range of public health issues tied to such pollutants including serious respiratory illnesses and cardiovascular-related effects.

3.      Under the authority provided by the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, the United States Environmental Protection Agency ("EPA") regulates diesel engines to reduce emissions, including the "greenhouse gases" and established increasingly strict "Tier 2" emissions standards for light-duty diesel vehicles.  Beginning each year after 2004, these standards increasingly limited the amount of greenhouse gases that new light-duty diesel vehicles' engines could emit.  Beginning in 2007, full implementation and compliance was necessary.  Without meeting these standards, automobile manufacturers could not sell their vehicles in the United States.

4.      Uprooting the common wisdom about diesel, and to comply with even the strictest emissions standards set by the EPA, Mercedes-Benz USA, LLC ("Mercedes") developed and marketed its BlueTEC™ "clean diesel" technology which it began selling in all of its light-duty diesel vehicles starting in 2006.  BlueTEC™ offered the power and efficiency of a diesel engine while cutting greenhouse emissions to less than that of a regular gasoline engine.  BlueTEC™ vehicles were sold by Mercedes as "the world's cleanest and most advanced diesel" with "ultra-low emissions, high fuel economy and responsive performance."  Mercedes calculated that their diesel cars emitted "up to 30% lower greenhouse-gas emissions than gasoline."  Thus, Mercedes concluded that its Clean Diesel were "Earth Friendly."  Or so Mercedes claimed.

5.      In the wake of the Volkswagen "Clean Diesel" scandal, diesel cars of automobile manufacturers other than Volkswagen were subjected to "real world" driving tests by various organizations.  Like the Volkswagen "clean diesels," when a Mercedes BlueTEC™ C-Class diesel automobile was tested on the road it emitted far more pollution than in the standard lab tests.  NOx levels alone averaged 603 mg/km, which is 19 times higher than the EPA standards with some measurements as high as 2000 mg/km, a level more than 65 times higher than the EPA standards.

6.      The difference is part of Mercedes' design of the BlueTEC™ technology.  The EPA testing calls for testing conditions "representative of sunny summer days" with ambient temperatures around 95 degrees Fahrenheit.  *See* 40 C.F.R. 86.129-94(d)(3).   Under such conditions, the "BlueTEC™ technology meets the EPA emissions standards.  However, at lower temperatures, especially at or below 50 degrees Fahrenheit, the BlueTEC™ technology effectively shuts down, leaving little barrier between the dirty diesel and the environment.

7.      On information and belief, all of Mercedes' 2006 and later model year light duty vehicles incorporate the BlueTEC™ "clean diesel" technology, including ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter (the "Affected Vehicles").

8.      Mercedes will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics.  Even if Mercedes is able to make Class members' Affected Vehicles EPA compliant, Class members' vehicles will no longer perform as they did when purchased and as warranted and advertised.  As a result, every Affected Vehicle will incur a diminution of value and owners and lessees of Affected Vehicles will pay more for fuel while using their Affected Vehicles.

**JURISDICTION & VENUE**

9.       This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, where Mercedes was headquartered for most of the relevant time period and where Mercedes has marketed, advertised, sold, and leased the Affected Vehicles within this District.

**PARTIES**

11.     Plaintiff Hassan Zavareei is an individual residing in Bethesda, Maryland.  Mr. Zavareei purchased a 2011 Mercedes E350, VIN WDDHF2EB3BA501832 from Euro Motorcars in Gaithersburg, Maryland on February 18, 2013.

12.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC™ "clean diesel" system.  Had Mercedes disclosed the actual nature and design of its BlueTEC™ "clean diesel" technology, Plaintiff would not have purchased the vehicle, or would have paid less for it.

13.     Each and every Plaintiff and each Class member has been injured and suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC™ "clean diesel" system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

14. Defendant Mercedes-Benz USA, LLC ("Mercedes") is a Delaware limited liability corporation whose headquarters has been located at 303 Perimeter Center North, Suite 202, Atlanta, Georgia, 30346 since the summer of 2015. For most of the period of protracted fraud, Mercedes' headquarters was 1 Mercedes Drive, Montvale, New Jersey 07645. Mercedes still maintains its Customer Service Center is at 3 Mercedes Drive, Montvale, New Jersey 07645, and it continues to operate a Learning and Performance Center at the same location. Mercedes' regional sales office is in Parsippany, New Jersey, and regional parts distribution center is in Robbinsville, New Jersey.

## FACTUAL ALLEGATIONS

### A. The Truth About Diesel

15. Compared to gasoline, diesel is an unrefined fuel. As a less refined fuel, diesel has more energy, providing more power, heat, force and efficiency than gasoline. Gasoline engines require a spark plug to detonate the gasoline air mixture in a cylinder. Diesel will combust simply by being compressed by the piston in a cylinder, exploding when sufficiently compressed.

16. As a less refined fuel, diesel is also dirtier. One of the primary pollutants is NOx – nitrogen bound with an odd number of oxygen atoms. Nitric oxide has one atom of oxygen bonded with one atom of nitrogen and nitrogen dioxide has two atoms of oxygen bonded to one atom of nitrogen.

17. The NOx gases are some of the worst of the "greenhouse gases," which are at the root of many of the environmental and public issues associated with fossil fuels. These "greenhouse gases" are a leading cause of ground level ozone (smog), acid rain and a range of public health issues including serious respiratory illnesses and cardiovascular-related effects.

18.     Under the authority provided by the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, the EPA regulates diesel engines to reduce emissions, including the "greenhouse gases" and established increasingly strict "Tier 2" emissions standards for light-duty diesel vehicles. Beginning each year after 2004, these standards increasingly limited the amount of greenhouse gases that new light-duty diesel could emit.   Beginning in 2007, full implementation and compliance was necessary.   Beginning in 2017, new "Tier 3" standards will start coming into force.

19.     Without meeting these standards, automobile manufacturers cannot legally sell their vehicles in the United States.

**B.     The Claims Mercedes Made About Its BlueTEC™ "Clean Diesel" Technology**

20.     Car manufacturers have struggled to produce diesel engines that run clean – offering all the benefits of diesel without the stink.   But diesel engines produce a lot of emissions, including NOx, and do so repeatedly, constantly and in great volume.   Various technologies exist to deal with the pollutants. Traps can be placed in the emissions system to trap the pollutants and later burn them off.   Catalysts can be injected into the exhaust stream to transform the pollutants into innocuous chemicals like nitrogen and water, which are then expelled.   Each has their benefits, and each their costs, which frequently include the cost of decreased power, performance and efficiency.

21.     Mercedes called its approach the BlueTEC™ "clean diesel" system, which is a trumped up "selective catalytic reduction" ("SCR") system where a catalyst (urea) is sprayed into the emissions near the end of the emission system in order to convert NOx into less harmful substances, such as nitrogen and oxygen.

22.     The urea solution, which is branded "AdBlue," is held in its own tank under the car.  The AdBlue in the tank takes up space under the hood and must be periodically refilled to ensure that the catalyst system effectively removes NOx.  The BlueTEC™ technology, when it is operational, results in cleaner emissions without compromising power or fuel economy.

**C.     Mercedes Marketed the BlueTEC™ System as the World's Cleanest Diesel Engine**

23.     Mercedes placed the BlueTEC™ "clean diesel" system as the latest innovation by Mercedes in diesel cars.  From putting the first diesel engine in an automobile, to diesel turbo engines, Mercedes was always on the cutting edge of diesel technology:



24.     Mercedes sold BlueTEC as the quintessential promise of "clean diesel:"



25.     This was not merely the tacit warranty that the BlueTEC™ diesel vehicles were EPA compliant, but that they were far more:  "BlueTEC:  simply the world's cleanest and most advanced diesel. . . .  [W]e've been constantly refining and mastering the technology, now available in five different Mercedes-Benz BlueTEC models in all 50 states."

26.     Mercedes promised that the BlueTEC Clean Diesel vehicles provide "higher torque and efficiency with up to 30% lower greenhouse-gas emissions than gasoline," together with "ultra-low emissions, high fuel economy and responsive performance[.]"  Similarly, "[w]hen injected into the exhaust, AdBlue converts the nitrogen oxide emissions into harmless nitrogen and oxygen" and "reduces the nitrogen oxides in the exhaust gases by up to 90%."

27.     Accordingly, the BlueTEC engine was said by Mercedes to simply be "[e]arth-friendly, around the world."

28.     Echoing the sentiment of its consumers, Mercedes presented itself as a steward of the environment:  "Long before it became front-page news, Mercedes-Benz has been innovating and implementing new ways to help minimize the impact of cars and trucks on the world we share.  It's a promise that's been kept for generations, and not just with cleaner, more efficient power under the hood.  . . .  For generations, Mercedes-Benz has been breaking new ground to help preserve the earth for future generations."

29.     So, Mercedes calls BlueTEC an "environmental hero"  and makes clear that cleaner emissions mean cleaner air and cleaner lungs:





**D.      What BlueTEC™ Really Means**

30.      However, Mercedes has designed its BlueTEC™ "clean diesel" system to only run clean when ambient temperatures are warm, like when the emissions system is being tested.

As the temperatures drop lower, particularly starting at 50 degrees Fahrenheit, the BlueTEC™ "clean diesel" cars stop being clean or even legal.

31.     In the wake of the Volkswagen "Clean Diesel" scandal, diesel cars of automobile manufacturers other than Volkswagen were subjected to "real world" driving tests by various organizations.   Like the VW "clean diesels," when a Mercedes BlueTEC™ C-Class diesel automobile was tested on the road, it emitted far more pollution than in the standard lab tests. NOx levels alone averaged 603 mg/km, which is 19 times higher than the EPA standards with some measurements as high as 2000 mg/km, a level more than 65 times higher than the EPA standards.

32.     The difference between what Mercedes promised and what Mercedes delivered is inherent in Mercedes' design of the BlueTEC™ technology.   The EPA testing calls for testing conditions "representative of sunny summer days" with ambient temperatures around 95 degrees Fahrenheit.   *See* 40 C.F.R. 86.129-94(d)(3).   Under such conditions, the "BlueTEC™ technology meets the EPA emissions standards.   However, at lower temperatures, especially at or below 50 degrees Fahrenheit, the BlueTEC™ technology effectively shuts down, leaving far less of a barrier between the dirty diesel and the environment.

33.     As first reported in *Der Spiegel,* a leading German language news weekly, in February 2016, Mercedes admitted that its C-Class diesel cars do not run clean when the temperature drops below 50 degrees Fahrenheit, but argued that they need to run dirty starting at that temperature or the engine would be damaged.   Technically, however, Mercedes claims to have met the environmental regulations and lived up to its promises (at least on summer days) about BlueTEC™ "clean diesel" technology.

34.     Mercedes never disclosed to consumers or any government that Mercedes diesels with BlueTEC™ vehicles may be "clean" diesels when it is warm, but are "dirty" diesels when it is not.  Mercedes never disclosed that, when the temperature drops below 50 degrees, it was selling just another diesel engine delivering more power and efficiency than a gasoline engine, and delivering far more pollutants.

35.     The *Der Spiegel* article took much of its information from a study commissioned by the Dutch Ministry of Infrastructure and the Environment from a private non-profit organization Nederlandse Organisatie voor Toegepast Natuurwetenschappelijk Onderzoek ("TNO,"  the Netherlands Organization for Applied Scientific Research) in 2015. This study confirmed that when driven on the road the Mercedes C-Class 220 emits NOx at levels much higher than in controlled dynamometer tests and much higher than the European standards, which are far less stringent than the U.S. standards.

36.     The 2015 TNO Report found that BlueTEC™ NOx emissions ranged from 250 to 2000 mg/km compared to the European standard of 80 mg/km (again, a much more lenient standard than the U.S. standard).  Upon review of the data and the C-Class vehicle, TNO drew several conclusions about Mercedes' design decisions, each of which shows its intent to trick governments and the consumers:

         a.   "Overall the NOx real-world emissions of [the C-Class 220] are relatively high, especially during the very short trips . . . and trips at high speeds."

         b.   The "results show clearly that different control strategies of the engine are applied in chassis dynamometer tests and on the road."

         c.   "In chassis dynamometer tests the engine out NOx emissions are 100 to 450 mg/km, indicating an effective EGR [exhaust gas recirculation]

system which reduces NOx emissions in certain chassis dynamometer tests.  In real-world tests the EGR system seems to be less effective or not effective at all, as engine out NOx emissions in real-world tests range from 450 to as much as 2250 mg/km."

37.     Noting one of the trade-offs Mercedes made in using the urea-based SCR system, TNO found that the reservoir tank for the AdBlue liquid was far too small to hold the amount of AdBlue catalyst necessary to reduce NOx emissions below regulatory limits and to meet the advertised service interval (the interval between oil changes).  That is, Mercedes made the AdBlue reservoir tank too small to run the engine clean between oil changes.

38.     Given all of the limitations of the C-Class' BlueTEC™ "clean diesel" system, TNO concluded for the Dutch government that the car was a polluter and further remarked:  "In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions."

39.     Particularly in the wake of the Volkswagen "clean diesel" scandal, other organizations took up their own tests of diesel cars.  The European Transportation and Environment ("T&E") organization (tasked with promoting sustainable transportation) compiled data from "respected testing authorities around Europe" that shows Mercedes might sell cars that produce illegal levels of tailpipe emissions.  T&E stated in September 2015 that real-world emissions testing showed drastic differences from laboratory tests such that the Mercedes models tested emitted 50% more pollutants such as $CO_2$ on the road than in their laboratory tests.

40.     Furthermore, the European version of AAA, ADAC, conducted its own diesel emissions tests in 2015 and concluded that the Mercedes diesels (including the C220 at the heart

of the TNO report) were found to emit 2 to 3 times higher levels of NOx pollution when tested in more realistic driving conditions.

41.    Similarly, Emissions Analytics, a U.K. company formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles," conducted its own tests in 2015, and found the Mercedes BlueTEC™ diesel cars were even worse than previously reported.   According to the real-world road testing by Emissions Analytics, Mercedes' diesel cars produced an average of 0.406g/km of NOx on the road, 5 times higher than the European standards—and more than 13 times higher than the U.S. standards (.03g/km).

42.    In response to these studies and the real threat posed by the actual emissions of these vehicles, Deutsche Umwelthilfe ("DUH," the German Environmental Aid organization) recently called for emergency action to ban the C220 from city centers in Germany when the temperature drops below 10 degrees Celsius/50 degrees Fahrenheit.

43.    In response to the current diesel emissions controversy, Mercedes' parent company, Daimler AG, has issued a statement claiming:  "We categorically deny the accusation of manipulating emission tests regarding our vehicles.   A defeat device, a function which illegitimately reduces emissions during testing, has never been and will never be used at Daimler.  This holds true for both diesel and petrol engines.  Our engines meet and adhere to every legal requirement. . . . [W]e can confirm that none of the allegations apply to our vehicles. The technical programming of our engines adheres to all legal requirements."

44.    In the wake of the investigation of the Volkswagen "Clean Diesel" fraud and reports like those outlined above, the EPA has widened its probe of auto emissions to include, for example, certain Mercedes BlueTEC vehicles.

13

45.     On information and belief, all of Mercedes' 2006 and later model year light duty vehicles incorporate the BlueTEC™ "clean diesel" technology, including ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule

46.     Class members had no way of knowing about Mercedes' deception with respect to the unlawfully high emissions of its BlueTEC™ "clean diesel" system in Affected Vehicles. Mercedes continues to market the Affected Vehicles as "clean" diesels and also continues to claim that that Affected Vehicles comply with EPA emissions standards.

47.     Within any applicable statutes of limitation, Class members could not have discovered through the exercise of reasonable diligence that Mercedes was concealing the conduct complained of herein and misrepresenting the true qualities of the Affected Vehicles, including their emissions system.

48.     Class members did not know facts that would have caused a reasonable person to suspect that Mercedes did not present complete, truthful and accurate information to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Mercedes had concealed information about the true nature of the Affected Vehicles.

49.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Affected Vehicles.

**B.      Fraudulent Concealment**

50.     Due to Mercedes' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action all applicable statutes of limitation have been tolled.

51.     Instead of disclosing its emissions scheme, or the true qualities of the Affected Vehicles, and in light of its disregard of federal and state law, Mercedes falsely represented that the Affected Vehicles complied with federal and state emissions standards, and that the diesel engines were "clean."

**C.      Estoppel**

52.     Mercedes was under a continuous duty to disclose to Class members the true character, quality, and nature of emissions from the Affected Vehicles, and the true character and quality of those vehicles' emissions systems and of the compliance (or lack thereof) of those systems with applicable federal and state law.

53.     Mercedes knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the emissions systems, and the emissions, of the Affected Vehicles.

54.     Mercedes was also under a continuous duty to disclose to the Class members that it had engaged in the conduct complained of herein contrary to federal and state emissions and clean air standards, and that it systematically devalued compliance with federal and state law regulating vehicle emissions and clean air.

55.     Based on the foregoing, Mercedes is estopped from relying on any statutes of limitations in defense of this action.

**APPLICATION OF NEW JERSEY LAW TO THE CLAIMS OF THE CLASS**

56.     New Jersey's substantive law should apply to the claims of all Class members. Mercedes has extensive and systematic contacts with New Jersey.  A close relationship exists between New Jersey, its laws, and the Class members' claims.

57.     Until June 2015, late in its course of fraud, Mercedes maintained its headquarters in New Jersey and still maintains regional operations here.  New Jersey was the nerve center of its marketing and customer relations operations and continues to be so.  New Jersey was the nerve center of Mercedes' regulatory compliance and testing operations including those related to the EPA.

58.     New Jersey has a substantial interest in applying its laws to the claims of the proposed Class.  Moreover, many Class members live in New Jersey and bought or leased their Affected Vehicles in New Jersey.

59.     New Jersey has a foreseeable, reasonable and legitimate interest in ensuring that companies such as Mercedes that do business in New Jersey and that use New Jersey as a base for their North American activities adhere to New Jersey's laws, make and provide good quality products to consumers and honor their promises to consumers.  These state interests also ensure that applying New Jersey substantive law in this case is constitutionally permissible and neither arbitrary nor unfair.

60.     New Jersey's Legislature intended the New Jersey Consumer Fraud Act ("NJCFA"), §§ 56:8-1, *et seq.*, in particular, to reach as broadly as possible in remedying wrongdoing that victimizes consumers.

61.     By doing substantial business in New Jersey, availing itself of New Jersey's infrastructure and markets, and selling and leasing the same Affected Vehicles in New Jersey as

it did in other states, Mercedes cannot claim unfairness or surprise in being subjected to New Jersey's laws including the NJCFA.

62.     Clear constitutional authority permits the application of New Jersey's substantive law to the Class' claims and Mercedes' conduct, under the United States Constitution's Due Process Clause, U.S. Const. Amend. 14 § 1; and the Full Faith and Credit Clause, U.S. Const. Art. IV, § 1.

**CLASS ALLEGATIONS**

63.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

All persons or entities in the United States who owned and/or leased an "Affected Vehicle" as of the date of the filing of this action.  Affected Vehicles include, without limitation, the diesel-powered:  ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter.

**The Alabama Subclass**

All persons or entities in the state of Alabama who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

**The Alaska Subclass**

All persons or entities in the state of Alaska who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

**The Arizona Subclass**

All persons or entities in the state of Arizona who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

**The Arkansas Subclass**

All persons or entities in the state of Arkansas who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The California Subclass

All persons or entities in the state of California who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Colorado Subclass

All persons or entities in the state of Colorado who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Connecticut Subclass

All persons or entities in the state of Connecticut who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Delaware Subclass

All persons or entities in the state of Delaware who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Florida Subclass

All persons or entities in the state of Florida who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Georgia Subclass

All persons or entities in the state of Georgia who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Hawaii Subclass

All persons or entities in the state of Hawaii who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Idaho Subclass

All persons or entities in the state of Idaho who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Illinois Subclass

All persons or entities in the state of Illinois who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Indiana Subclass

All persons or entities in the state of Indiana who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Iowa Subclass

All persons or entities in the state of Iowa who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Kansas Subclass

All persons or entities in the state of Kansas who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Kentucky Subclass

All persons or entities in the state of Kentucky who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Louisiana Subclass

All persons or entities in the state of Louisiana who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Maine Subclass

All persons or entities in the state of Maine who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Maryland Subclass

All persons or entities in the state of Maryland who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Massachusetts Subclass

All persons or entities in the state of Massachusetts who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Michigan Subclass

All persons or entities in the state of Michigan who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Minnesota Subclass

All persons or entities in the state of Minnesota who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Mississippi Subclass

All persons or entities in the state of Mississippi who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Missouri Subclass

All persons or entities in the state of Missouri who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Montana Subclass

All persons or entities in the state of Montana who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Nebraska Subclass

All persons or entities in the state of Nebraska who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Nevada Subclass

All persons or entities in the state of Nevada who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The New Hampshire Subclass

All persons or entities in the state of New Hampshire who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The New Jersey Subclass

All persons or entities in the state of New Jersey who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The New Mexico Subclass

All persons or entities in the state of New Mexico who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The New York Subclass

All persons or entities in the state of New York who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The North Carolina Subclass

All persons or entities in the state of North Carolina who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The North Dakota Subclass

All persons or entities in the state of North Dakota who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Ohio Subclass

All persons or entities in the state of Ohio who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Oklahoma Subclass

All persons or entities in the state of Oklahoma who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Oregon Subclass

All persons or entities in the state of Oregon who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Pennsylvania Subclass

All persons or entities in the state of Pennsylvania who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Rhode Island Subclass

All persons or entities in the state of Rhode Island who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The South Carolina Subclass

All persons or entities in the state of South Carolina who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The South Dakota Subclass

All persons or entities in the state of South Dakota who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Tennessee Subclass

All persons or entities in the state of Tennessee who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Texas Subclass

All persons or entities in the state of Texas who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Utah Subclass

All persons or entities in the state of Utah who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Vermont Subclass

All persons or entities in the state of Vermont who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Virginia Subclass

All persons or entities in the state of Virginia who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Washington Subclass

All persons or entities in the state of Washington who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The West Virginia Subclass

All persons or entities in the state of West Virginia who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Wisconsin Subclass

All persons or entities in the state of Wisconsin who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The Wyoming Subclass

All persons or entities in the state of Wyoming who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

### The District of Columbia Subclass

All persons or entities in the District of Columbia who owned and/or leased an Affected Vehicle as of the date of the filing of this action.

64.     Excluded from the Class are individuals who have personal injury claims resulting from the unlawfully high emissions in the BlueTEC™ "clean diesel" system.  Also excluded from the Class are Mercedes and its subsidiaries and affiliates; all persons who properly elect to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

65.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

66.     This action has been brought and may be properly maintained on behalf of each of the Classes and Subclasses proposed herein under Federal Rule of Civil Procedure 23.

67.     **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are at least thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Mercedes' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

68.     **Commonality and Predominance**:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

23

a)      Whether Mercedes engaged in the conduct alleged herein;

b)      Whether Mercedes designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c)      Whether the BlueTEC™ "clean diesel" systems in the Affected Vehicles emit pollutants at levels that do not make them "clean" diesels and that do not comply with U.S. EPA requirements;

d)      Whether the BlueTEC™ "clean diesel" systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e)      Whether Mercedes knew about the unlawfully high emissions and, if so, how long Mercedes has known;

f)      Whether Mercedes designed, manufactured, marketed, and distributed Affected Vehicles with defective or otherwise inadequate emission controls;

g)      Whether Mercedes' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h)      Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

i)      Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j)      Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

69.   **Typicality**:  Federal Rule of Civil Procedure 23(a)(3):  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Mercedes' wrongful conduct as described above.

70.   **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

71.   **Declaratory and Injunctive Relief**:  Federal Rule of Civil Procedure 23(b)(2): Mercedes has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to each Class as a whole.

72.   **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Mercedes, so it would be impracticable for the members of the Classes to individually seek redress for Mercedes' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I
### Violations Of The New Jersey Consumer Fraud Act
### (N.J.S.A.. §§ 56:8-1, *et seq.*)
### (Nationwide Class and New Jersey Subclass)

73.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

74.     Plaintiff brings this Count on behalf of the Nationwide Class and New Jersey Subclass.

75.     The NJCFA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

76.     In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles is ineffective when ambient temperatures drop below 50 degrees Fahrenheit and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx.  Accordingly, Mercedes engaged in unfair and deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and the general public outweighs any benefit associated with such practices.

26

77.     Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

78.     Mercedes' conduct proximately caused injuries to Plaintiff and the other Class and Subclass members who overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.

### COUNT II
### Breach Of Contract
### (Based On New Jersey Law)

79.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

80.     Plaintiff brings this Count on behalf of the Nationwide Class and New Jersey Subclass.

81.     Mercedes represented, promised and warranted that the Affected Vehicles were EPA compliant, were clean emission vehicles and were worth the premium paid for the BlueTEC™ emissions system.

82.     Mercedes' misrepresentations and omissions alleged herein, including but not limited to Mercedes' failure to disclose that the NOx reduction system in the Affected Vehicles is ineffected when ambient temperatures drop below 50 degrees Fahrenheit, caused Plaintiff and the other Class members to make their purchases or leases of their Affected Vehicles.

83.     Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles.  Accordingly, Plaintiff and the other Class and New Jersey Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

27

84.     As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Class and New Jersey Subclass have been damaged, including compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
### Fraudulent Concealment
### (Based on New Jersey Law)

85.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

86.     Plaintiff brings this Count on behalf of the Nationwide Class and New Jersey Subclass.

87.     Mercedes intentionally concealed that the BlueTEC™ system in the Affected Vehicles' is ineffective when ambient temperatures drop below 50 degrees Fahrenheit, that the Affected Vehicles emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

88.     Mercedes further affirmatively misrepresented to Plaintiff in advertising and other statements, including standard materials provided with each car, that the Affected Vehicles it was selling had no significant defects, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

89.     Mercedes knew these representations were false when made.

90.     Mercedes had a duty to disclose the true nature of the BlueTEC™ emission system because Plaintiff and the other Class and New Jersey Subclass members relied on Mercedes' material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

91.     The concealed facts were material because if they had been disclosed because they were facts a person would typically and could reasonably rely upon and because,   Plaintiff and the

other Class and New Jersey Subclass members would not have bought or leased the Affected

Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

92.    As a result of their reliance, Plaintiff and the other Class and New Jersey Subclass

members have been injured in an amount to be proven at trial, including, but not limited to, their

lost benefit of the bargain and overpayment at the time of purchase or lease and/or the

diminished value of their Affected Vehicles.

**COUNT IV**
**Violations of The Maryland Consumer Protection Act**
**(Md. Code Com. Law § 13-101, *et seq.*)**
**(Maryland Subclass)**

93.    Plaintiff incorporates by reference all preceding allegations as though fully set

forth herein.

94.    Plaintiff brings this Count on behalf of the Maryland Subclass.

95.    The Maryland Consumer Protection Act prohibits unfair or deceptive acts or

practices in the sale of any consumer good.

96.    In the course of Mercedes' business, it willfully failed to disclose and actively

concealed that the NOx reduction system in the Affected Vehicles is ineffective when ambient

temperatures drop below 50 degrees Fahrenheit and that the Affected Vehicles emitted

unlawfully high levels of pollutants, including NOx.  Accordingly, Mercedes engaged in unfair

and deceptive trade practices, including representing that Affected Vehicles have characteristics,

uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a

particular standard and quality when they are not; advertising Affected Vehicles with the intent

not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further,

Mercedes' acts and practices described herein offend established public policy because the harm

29

they cause to consumers, motorists, and the general public outweighs any benefit associated with such practices.

97.     Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

98.     Mercedes' conduct proximately caused injuries to Plaintiff and the other Class and Maryland Subclass members who overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.

**COUNT V**
**Breach Of Contract**
**(Based On Maryland Law)**

99.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

100.    Plaintiff brings this Count on behalf of the Maryland Subclass.

101.    Mercedes represented, promised and warranted that the Affected Vehicles were EPA compliant, were clean emission vehicles and were worth the premium paid for the BlueTEC™ emissions system.

102.    Mercedes' misrepresentations and omissions alleged herein, including but not limited to Mercedes' failure to disclose that the NOx reduction system in the Affected Vehicles is ineffected when ambient temperatures drop below 50 degrees Fahrenheit, caused Plaintiff and the other Class and Maryland Subclass members to make their purchases or leases of their Affected Vehicles.

103.    Absent those misrepresentations and omissions, Plaintiff and the other Class and Maryland Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles.  Accordingly, Plaintiff and the other

30

Class and Maryland Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

104.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Class and Maryland Subclass have been damaged, including compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VI**
**Fraudulent Concealment**
**(Based on Maryland Law)**

105.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

106.    Plaintiff brings this Count on behalf of the Maryland Subclass.

107.    Mercedes intentionally concealed that the BlueTEC™ system in the Affected Vehicles' is ineffective when ambient temperatures drop below 50 degrees Fahrenheit, that the Affected Vehicles emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

108.    Mercedes further affirmatively misrepresented to Plaintiff in advertising and other statements, including standard materials provided with each car, that the Affected Vehicles it was selling had no significant defects, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

109.    Mercedes knew these representations were false when made.

110.    Mercedes had a duty to disclose the true nature of the BlueTEC™ emission system because Plaintiff and the other Class and Maryland Subclass members relied on Mercedes' material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

111.    The concealed facts were material because if they had been disclosed because they were facts a person would typically and could reasonably rely upon and because,   Plaintiff and the other Class and Maryland Subclass members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

112.    As a result of their reliance, Plaintiff and the other Class and Maryland Subclass members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

### COUNT VII
### Breach Of Contract
### (Other State Subclasses)

113.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

114.    Plaintiff brings this Count on behalf of state subclass members except the New Jersey and Maryland state subclasses.

115.    Mercedes represented, promised and warranted that the Affected Vehicles were EPA compliant, were clean emission vehicles and were worth the premium paid for the BlueTEC™ emissions system.

116.    Mercedes' misrepresentations and omissions alleged herein, including but not limited to Mercedes' failure to disclose that the NOx reduction system in the Affected Vehicles is ineffected when ambient temperatures drop below 50 degrees Fahrenheit, caused Plaintiff and the other Class and State Subclass members to make their purchases or leases of their Affected Vehicles.

117.    Absent those misrepresentations and omissions, Plaintiff and the other Class and State Subclass members would not have purchased or leased these Affected Vehicles, would not

32

have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles.  Accordingly, Plaintiff and the other Class and State Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

118.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Class and State Subclasses have been damaged, including compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VIII**
**Violations Of The Unfair And Deceptive Trade Practices Acts**
**(Other States Subclasses)**

119.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

120.    Plaintiff brings this Count on behalf of the subclasses associated with the states identified below in the next paragraph immediately *infra*.

121.    Mercedes' conduct described herein constitutes illegal practices, unfair, deceptive and unconscionable conduct under the unfair and deceptive trade practices acts of 36 states and the District of Columbia, as follows:

a.    Alaska:  The aforementioned practices by Mercedes were and are in violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Ala. Code § 45.50.471, *et seq*.;

b.    Arkansas:  The aforementioned practices by Mercedes were and are in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq*.;

c.    California:  The aforementioned practices by Mercedes were and are in violation of the California Unfair and Deceptive Practices Act, Cal. Civ. Code § 1750, *et seq*., and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq*.;

33

d.      Colorado:  The aforementioned practices by Mercedes were and are in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut:  The aforementioned practices by Mercedes were and are in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.      Delaware:  The aforementioned practices by Mercedes were and are in violation of the Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia:  The aforementioned practices by Mercedes were and are in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*;

h.      Florida:  The aforementioned practices by Mercedes were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.      Georgia:  The aforementioned practices by Mercedes were and are in violation of the Georgia Fair Business Practices Act, §10-1-390 *et seq.*;

j.      Hawaii:  The aforementioned practices by Mercedes were and are in violation of Hawaii's Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1, *et. seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

k.      Idaho:  The aforementioned practices by Mercedes were and are in violation of the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

l.      Illinois:  The aforementioned practices by Mercedes were and are in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

m.      Kansas:  The aforementioned practices by Mercedes were and are in violation of the Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50-626, *et seq*.;

n.      Kentucky:  The aforementioned practices by Mercedes were and are in violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq*., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, et seq.;

o.      Louisiana:  The aforementioned practices by Mercedes were and are in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq*.;

p.      Maine:  The aforementioned practices by Mercedes were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq*., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.;

q.      Massachusetts:  The aforementioned practices by Mercedes were and are in violation of the Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq*;

r.      Michigan:  The aforementioned practices by Mercedes were and are in violation of the Michigan Consumer Protection Act, §§ 445.901, *et seq*.;

s.      Minnesota:  The aforementioned practices by Mercedes were and are in violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et*

*seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

t.      Mississippi:  The aforementioned practices by Mercedes were and are in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*;

u.      Missouri:  The aforementioned practices by Mercedes were and are in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

v.      Montana:  The aforementioned practices by Mercedes were and are in violation of the  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

w.      Nebraska:  The aforementioned practices by Mercedes were and are in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.*;

x.      Nevada:  The aforementioned practices by Mercedes were and are in violation of the Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*; New Hampshire:  The aforementioned practices by Mercedes were and are in violation of the New Hampshire Consumer Protection Act,  N.H. Rev. Stat. § 358-A:1, *et seq.*;

y.      New Mexico:  The aforementioned practices by Mercedes were and are in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*;

z.      New York:  The aforementioned practices by Mercedes were and are in violation of the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

aa.      North Dakota:  The aforementioned practices by Mercedes were and are in violation of the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq.*;

bb.      Oklahoma:  The aforementioned practices by Mercedes were and are in violation of the Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

cc.      Oregon:  The aforementioned practices by Mercedes were and are in violation of the Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

dd.      Rhode Island:  The aforementioned practices by Mercedes were and are in violation of the Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

ee.      South Carolina:  The aforementioned practices by Mercedes were and are in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

ff.      South Dakota:  The aforementioned practices by Mercedes were and are in violation of  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq.*;

gg.      Vermont:  The aforementioned practices by Mercedes were and are in violation of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

hh.      Virginia:  The aforementioned practices by Mercedes were and are in violation of the Virginia Consumer Protection Act, Va. Civ. Code § 59.1-196, *et seq.*

ii.    Washington:  The aforementioned practices by Mercedes were and are in violation of the Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

jj.    West Virginia:  The aforementioned practices by Mercedes were and are in violation of the West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

kk.    Wisconsin: The aforementioned practices by Mercedes were and are in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

122.    Under these consumer protection statutes, Plaintiff and Subclass members are consumers who purchased Affected Vehicles pursuant to a consumer transaction and for personal use.

123.    Under these consumer protection statutes Mercedes is a supplier, manufacturer, advertiser, and/or seller who is subject to liability under such legislation.

124.    Mercedes violated these consumer protection statutes by uniformly, knowingly and falsely representing that the Affected Vehicles were "Clean Diesels" with low emissions, when in fact they were not, and by other acts alleged herein.

125.    Mercedes violated these consumer protection statutes by willfully failing to disclose and actively concealing that the NOx reduction system in the Affected Vehicles is ineffective when ambient temperatures drop below 50 degrees Fahrenheit and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

126.    As a direct result of the Mercedes' violations of these consumer protection statutes Plaintiff and members of the Class and State Subclasses have been damaged and entitled to compensatory damages, enhanced damages, and equitable and declaratory relief and any and all other available remedies.

## COUNT IX
### Fraudulent Concealment
### (Other State Subclasses)

127.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

128.    Plaintiff brings this Count on behalf of state subclass members except the New Jersey and Maryland state subclasses.

129.    Mercedes intentionally concealed that the BlueTEC™ system in the Affected Vehicles' is ineffective when ambient temperatures drop below 50 degrees Fahrenheit, that the Affected Vehicles emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

130.    Mercedes further affirmatively misrepresented to Plaintiff in advertising and other statements, including standard materials provided with each car, that the Affected Vehicles it was selling had no significant defects, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

131.    Mercedes knew these representations were false when made.

132.    Mercedes had a duty to disclose the true nature of the BlueTEC™ emission system because Plaintiff and the other Class and Subclass members relied on Mercedes' material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

133.    The concealed facts were material because if they had been disclosed because they were facts a person would typically and could reasonably rely upon and because,   Plaintiff and the other Class and Subclass members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

134.    As a result of their reliance, Plaintiff and the other Class and subclass members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully requests that the Court enter judgment in their favor and against Mercedes, as follows:

A.    Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiff's counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Mercedes from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

E.    Damages, including enhanced and punitive damages, interest, costs, and disgorgement in an amount to be determined at trial;

F.    An award of costs and attorneys' fees; and

G.    Such other or further relief as may be appropriate.


Dated: April 22, 2016                    /s/ Christopher A. Seeger
                                         Christopher A. Seeger
                                         SEEGER WEISS LLP
                                         550 Broad Street, Suite 920
                                         Newark, NJ 07102
                                         (973) 639-9100

Lesley E. Weaver, Esq.
(admission *pro hac vice* to be requested)
BLOCK & LEVITON LLP
520 Third Street, Suite 108
Oakland, CA 94607
(415) 968-8992

*Attorneys for Plaintiff and the Proposed Classes*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.


Dated: April 22, 2016                          /s/ Christopher A. Seeger
                                               Christopher A. Seeger
                                               SEEGER WEISS LLP



*Attorneys for Plaintiff and the Proposed Classes*